UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE BLACKMON,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | CV 16-4936-AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on July 6, 2016. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 15.) On April 4, 2017, the parties filed a Joint Stipulation that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

# I.
# PROCEDURAL BACKGROUND

On June 18, 2012, Blackmon filed an application for supplemental security income benefits, alleging an onset date of April 12, 2012. Administrative Record ("AR") 13. The application was denied initially and on reconsideration. AR 13, 62, 87. Blackmon requested a hearing before an Administrative Law Judge ("ALJ"). On October 1, 2014, the ALJ conducted a hearing at which Blackmon and a vocational expert testified. AR 28-61. On January 23, 2015, the ALJ issued a decision denying benefits. AR 10-22. On May 11, 2016, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Blackmon had the severe impairments of degenerative joint disease of the left knee and left shoulder; mild degenerative joint disease of the cervical and lumbar spine; and obesity. AR 15.

Blackmon had the residual functional capacity ("RFC") to perform light work except that he could lift and carry five pounds frequently and 10 pounds occasionally with the left upper extremity; and sit, stand and/or walk short distances up to six hours in an eight-hour workday with a cane for walking long distances in excess of one city block. Blackmon was precluded from overhead reaching with the left upper extremity but could occasionally reach with the left upper extremity "in other planes" with no restrictions on reaching with the right upper extremity. Blackmon was limited to occasional postural activities and occasional climbing of ramps/stairs, but was

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

precluded from climbing ladders/ropes/scaffolds.  AR 16.  Blackmon could not perform past relevant work.  However, there are jobs that exist in significant numbers in the national economy that he can perform such as parking lot attendant, label coder and storage worker.  AR 20-21.

### C.     **Step Five Determination**

At step five of the sequential analysis, the ALJ found that Blackmon could perform the representative jobs of parking lot attendant (DOT § 915.473-010), label coder (DOT § 920.587-014) and storage worker (DOT § 295.367-026).

Blackmon makes two arguments.  Blackmon contends his RFC more closely mirrors the definition of sedentary work and he therefore would be found disabled under the "grids."  In addition, Blackmon argues his RFC is inconsistent with the requirements of the representative jobs set forth in the Dictionary of Occupational Titles ("DOT") in two ways:  (1) all three jobs require frequent reaching; and (2) the parking lot attendant job requires driving, which was precluded by Blackmon's treating physician, Dr. Naing (AR 404).

At step five of the sequential analysis, the burden shifts to the ALJ to identify jobs that exist in significant numbers in the national economy that the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998); 20 C.F.R. § 416.920.  In meeting this burden, the ALJ relies primarily on the DOT for information about the requirements of work in the national economy.  Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see also Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001).

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do:  (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2" (the "grids"). *Lounsburry*, 468 F.3d at 1114.  "Where a claimant suffers only exertional limitations, the

ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Id.* at 1115. The grids are inapplicable when "a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations."[2] *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and quotation marks omitted). "Nonexertional impairments may or may not significantly narrow the range of work a person can do." SSR 83-14. The ALJ may rely on the grids alone "only when the grids accurately and completely describe the claimant's abilities and limitations." *Tackett*, 180 F.3d at 1102 (citation and quotation marks omitted); *see also*, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200(e). The testimony of a vocational expert is required where nonexertional limitations significantly limit the range of work a claimant can perform. *Tackett*, 180 F.3d at 1102.

The ALJ may rely on the testimony of a vocational expert, who can assess the claimant's limitations and identify any existing jobs that the claimant can perform. *Tackett*, 180 F.3d at 1100-01. However, if the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. If the testimony conflicts, the ALJ must obtain a reasonable explanation for the deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007); SSR 00-4p. The ALJ's failure to inquire, however, can be harmless error when there is no actual conflict, or if the VE provided sufficient support to justify any variation from the DOT. *Massachi*, 486 F.3d at 1154 n.19.

---

[2] Nonexertional limitations include "postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching." *Lounsburry*, 468 F.3d at 1115.

5

### 1. **Light Work**

Blackmon argues that the ALJ's RFC assessment is actually sedentary work because his left arm is limited to sedentary weight restrictions and he needs a cane to walk long distances in excess of one city block.

The definitions of sedentary work and light work overlap to some degree. Unlike sedentary work, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). However, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The DOT categorizes all three representative jobs as light work based on this rationale. AR 21; DOT § 920.587-014; 295.367-026; 915.473-010. The vocational expert testified the parking lot attendant job could require more than four hours of standing and walking. AR 57. A limitation to two hours of standing/walking would eliminate the other two jobs, storage clerk and label coder.[3] AR 59. Blackmon has not shown error.

### 2. **Vocational Expert**

The vocational expert testified that her testimony was consistent with the DOT. AR 60. Blackmon argues that all three representative jobs require frequent reaching, which means reaching from 1/3 to 2/3 of the time on the job. The ALJ precluded Blackmon from overhead reaching with the left upper extremity, permitted occasional reaching with the left upper extremity "in other planes" and placed no restrictions on reaching with the right upper extremity. AR 16.

"For a difference between an expert's testimony and the [DOT]'s listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the

---

[3] The amount of standing/walking for the storage clerk job would depend on the volume of customers, the need to show available units and the size of the facility. AR 58, 60. The label coder job is more sedentary, with standing/walking needed to get more items. AR 58.

testimony must be at odds with the [DOT]'s listing of job requirements that are essential, integral, or expected. . . . But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required." *Gutierrez*, 844 F.3d 804, 808 (9th Cir. 2016). "[A]n ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances." *Id.*

"While 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead. Cashiering is a good example." *Id.* (citation omitted). When "the frequency or necessity of a task is unlikely and unforeseeable – as it is with cashiers having to reach overhead – there's no similar obligation" to ask follow up questions of the vocational expert. *Id.*

Moreover, an ALJ is "entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements.'" *Id.* at 809 (citation omitted).

There is no apparent or obvious conflict between Blackmon's RFC and the job of storage worker. The DOT's description of storage worker (DOT § 295.367-026) states that a storage worker leases storage space to customers, assists customers in the selection of a storage unit, informs customers of space availability, rental regulations and rates, and collects payment. A storage worker completes required forms, photographs the form and customer for the record, maintains rental records and waiting lists, and notifies customers when the lease is about to expire or rent is overdue. A storage worker inspects the storage area, observes individuals entering the storage area to prevent access or tampering by unauthorized persons, and maintains the premises. A storage worker also loads film into security cameras, documents dates of film changes and monitors camera operations to ensure they are working.

It is not apparent or obvious from the DOT's description that a storage worker would have to reach overhead. To the extent that this occupation would require frequent reaching, a storage worker could use one upper extremity. There is no apparent or obvious conflict between the DOT's description of the storage worker's job requirements and an RFC that would limit frequent reaching to one upper extremity. *See Ibach v. Colvin*, 2017 U.S. Dist. LEXIS 22515, *13-*14 (C.D. Cal. Feb. 15, 2017). The ALJ could rely on the vocational expert's testimony based on observation and experience in job placement. AR 58-59.

The vocational expert testified that there are approximately 31,000 storage worker jobs locally. AR 57. To the extent the ALJ erred in failing to follow up with questions to the vocational expert about the two other representative jobs, any such error would be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115-21 (9th Cir. 2012) (discussing harmless error principles).

### D. **Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the

adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ found that Blackmon's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the RFC assessment. AR 17. The ALJ found that the objective medical evidence does not substantiate the degree of disabling symptoms, and that Blackmon's activities of daily living are inconsistent with his allegations. AR 17-20.

The ALJ's finding that the objective medical evidence does not substantiate a limitation to sedentary work is not supported by substantial evidence. The ALJ did not discuss the opinion dated January 20, 2015, by Dr. Gaillunas, who opined that Blackmon was precluded from lifting more than 10 pounds, climbing ladders, crouching, bending repeatedly, and sitting or standing for more than 30 minutes at one time.[4] AR 440. Dr. Gaillunas referred Blackmon for a full orthopedic assessment and pain management to determine whether he will be capable of full time work in the future. *Id.* The ALJ therefore did not address whether Blackmon's activities of daily living are consistent with Dr. Gaillunas' assessment.

Previously, on July 23, 2012, Dr. Naing at LA County + USC Medical Center diagnosed chronic left knee pain with tear of patellar cartilage, chronic low back, neck and hip pain with degenerative changes, and chronic left shoulder pain. Dr. Naing indicated Blackmon "may not be able to do any type of work for one full year." AR 281.

---

[4] Dr. Gailluna's opinion is in the certified record. The court notes that the date of the opinion is close to the date of the ALJ's decision.

Dr. Naing's notes indicate Blackmon reported pain of 6/10, had left knee tenderness with severe range of motion ("ROM") limitations, left shoulder tenderness with mild ROM limitations, and tenderness over the cervical and lumbar spine with mild ROM limitations. Dr. Naing could not evaluate straight leg raising. AR 389. An MRI of the left shoulder indicated high grade tendinosis and degenerative disease of the acromioclavicular joint. AR 370-71. An MRI of the left knee indicated multiple areas of high grade chondrosis involving the anteromedial tibia plateau, posterolateral femoral condyle, medial patella and medial trochlea. AR 368. There were multilevel degenerative changes of the cervical and lumbar spine. AR 365. Dr. Naing's findings were similar during the period December 2012 through September 2014. AR 393, 396-97, 403-04, 407, 412, 419, 421.

The ALJ reasonably rejected the opinion of the examining physician that Blackmon could perform medium work with no restrictions on overhead activities as of November 2012. AR 19, 307. Even at that examination, Blackmon ambulated with a cane and with diminished cadence and velocity. AR 304.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings, including consideration of Dr. Gaillunas' treating opinion and Blackmon's credibility.

DATED: April 27, 2017

ALICIA G. ROSENBERG
United States Magistrate Judge